IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Plaintiff,

vs.                                                          No. CIV 07-0562 RB/RHS

NATIONAL CASUALTY COMPANY,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment (Doc. 11), filed on July 10, 2007, and Plaintiff's Cross Motion for Partial Summary Judgment (Doc. 13), filed on July 24, 2007. Jurisdiction arises under 28 U.S.C. § 1332. Having considered the submissions of counsel, relevant law, and being otherwise fully advised, I grant Defendant's motion and deny Plaintiff's cross-motion.

**I.    Background.**

Plaintiff filed a Complaint for Declaratory Judgment and for Subrogation in state court, seeking a declaratory judgment that an insurance policy ("Policy"), issued by Defendant to Santa Fe Fleet Services, Inc., d/b/a Dollar Rental Car Company ("Dollar"), provides coverage and requires subrogation with respect to claims arising out of an automobile accident that occurred in Albuquerque, New Mexico on October 22, 2005. Defendant removed this action pursuant to 28 U.S.C. §§1441 and 1446. Defendant denies that the Policy provides coverage.

In its motion for summary judgment, Defendant argues: (1) the Policy does not provide coverage; and (2) the Policy does not violate the New Mexico Mandatory Financial Responsibility Act ("NMMFRA"), N.M. Stat. Ann. §§ 66-5-201 to 66-5-239.

In its response to the motion, and in support of its cross-motion for partial summary judgment, Plaintiff argues that: (1) the Policy does not limit coverage provided to permissive users pursuant to the rental agreement; (2) the endorsement and rental agreement violate the NMFRA; (3) the endorsement and rental agreement are invalid; (4) in the event the Court determines that the endorsement and rental agreement are valid, the Court should certify the question of whether a customer of a rental car company can effectively decline insurance coverage on a rental vehicle; and (5) Plaintiff is entitled to subrogation.

**II.    Facts.**

On October 22, 2005, Mr. Carman Bliss, a resident of Alberta, Canada, visited Albuquerque, New Mexico to attend a reunion. (Doc. 34, Amend. Compl. ¶ 4.) Mr. Bliss rented a 2006 Ford motor vehicle ("Rental Vehicle") from Dollar at the Albuquerque International Sunport. (Doc 12-2, Def. Ex. 1, "Rental Agreement".) Dollar owned the Rental Vehicle and gave Mr. Bliss permission to drive it pursuant to the Rental Agreement. (Doc. 24, Stip. ¶¶ 3, 4.)

The Rental Agreement stated, in pertinent part: "OPTIONAL INSURANCE AND DAMAGE WAIVER: The Rental Company offers, for an additional charge, optional insurance products . . . to cover your liability from . . . claims that may arise out of your operation of the Rental Vehicle." (Doc 12-2, Def. Ex. 1.) At the time he entered into the Rental Agreement, Mr. Bliss declined to purchase optional supplemental liability insurance ("SLI") coverage offered by Defendant through Dollar when he initialed under the heading, "declines." (Doc 12-2, Def. Ex. 1.)

The Rental Agreement further provided: "DAMAGE / LOSS RESPONSIBILITIES are detailed on the accompanying Rental Agreement Jacket." (Doc 12-2, Def. Ex. 1.) With respect to the Rental Agreement Jacket, Defendant submitted the Affidavit of Bob Satches, Subrogation Manager at Dollar in Albuquerque. (Doc. 17-2, Def. Ex. 3, "Satches Aff.".) Mr. Satches states that

2

he faxed a copy of the Rental Agreement and Rental Agreement Jacket entered into by Mr. Bliss to Plaintiff on October 26, 2005.  (Satches Aff., Def. Ex. 3A.)

Mr. Satches explains that the Rental Agreement Jacket submitted by Defendant as Exhibit 1 to its motion for summary judgment is a slightly different version than the version entered into by Mr. Bliss.[1]  (*Compare* Doc. 12-2, Def. Ex. 1, "Alternate Rental Agreement Jacket" *with* Doc. 17-2, Def. Ex. 3A, "Rental Agreement Jacket".)  Mr. Satches states that the copy of the Rental Agreement Jacket faxed to Plaintiff on October 26, 2005 is the Rental Agreement Jacket that was entered into by Mr. Bliss when Mr. Bliss rented the vehicle.  (Doc. 17-2, Def. Ex. 3A.)

The Rental Agreement Jacket states, in pertinent part:

> 10. RENTER'S THIRD-PARTY LIABILITY RESPONSIBILITY. WHERE PERMITTED BY LAW, WE DO NOT PROVIDE YOU ANY THIRD-PARTY LIABILITY PROTECTION COVERING THIS RENTAL - UNLESS YOU PURCHASE AND ACCEPT SLI (DESCRIBED BELOW) AT THE BEGINNING OF THE RENTAL. YOU AGREE THAT YOU AND/OR YOUR INSURANCE COMPANY WILL BE RESPONSIBLE FOR HANDLING, DEFENDING AND PAYING ALL THIRD-PARTY CLAIMS FOR BODILY INJURY, DEATH OR PROPERTY DAMAGE CAUSED BY OR ARISING FROM THE USE OR OPERATION OF THE VEHICLE DURING THE RENTAL ("THIRD-PARTY CLAIMS"). YOU REPRESENT AND WARRANT THAT YOUR INSURANCE IS SUFFICIENT TO SATISFY THE MINIMUM APPLICABLE FINANCIAL

---

[1] The Alternate Rental Agreement Jacket provides, in pertinent part:
A. NATURE OF THIS AGREEMENT . . . You agree to defend, indemnify, and hold Dollar harmless from and against any and all loss, liability or damages whatsoever, caused by or arising out of the maintenance, use or operation of the Vehicle during the rental.
. . .
H. RENTER'S THIRD-PARTY LIABILITY RESPONSIBILITY . . . 1. You agree that You and/or your insurance company will be responsible for handling, defending, and paying all third-party claims for bodily injury, death or property damage caused by or originating from the use or operation of the Vehicle during the rental and You . . . agree to defend, indemnify, and hold Dollar harmless from and against any and all third-party claims . . . .  DOLLAR DOES NOT PROVIDE YOU ANY THIRD-PARTY LIABILITY PROTECTION COVERING THIS RENTAL . . . . 2. Where available, and for an additional daily charge, if you initialed that You accept the optional SLI at the beginning of the rental, SLI provides you with protection against third-party auto liability claims . . . .

(Doc. 1-2, Pl. Ex. 1; Doc. 12-2, Def. Ex. 1.)

RESPONSIBILITY LIMITS REQUIRED BY LAW.

11. OPTIONAL SUPPLEMENTAL LIABILITY INSURANCE ("SLI"). Where available, and for an additional daily charge, if You signed that You accept the optional SLI at the beginning of rental, You will be provided with protection against Third-Party Claims . . .

(Doc. 17-2, Def. Ex. 3A.)

On October 22, 2005, as Mr. Bliss drove the Rental Vehicle in Albuquerque, he failed to stop at a red light and collided with a vehicle driven by Patricia Prater. (Doc. 14, UMF ¶ 1). William Lafferty was a passenger in the Rental Vehicle at the time of the accident. (Doc. 14, UMF ¶ 7.) Both Mr. Bliss and Mr. Lafferty died as a result of the accident. (Doc. 14, UMF ¶ 7.) Ms. Prater sustained injuries. (Doc. 14, UMF ¶ 7.)

The Policy was in effect on the date of the accident and provided, in pertinent part:

A. Coverage
We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

(Doc. 1-3, Ex. B, Compl. Ex. A.) Defendant does not dispute that the Rental Vehicle was a covered auto under the Policy.

The Policy contained a Daily Rental Endorsement ("Endorsement") that stated, in pertinent part:

SECTION II – LIABILITY COVERAGE
A. Coverage
1. Who is an insured is amended to include the following:
The "rentee" and any other person authorized by and designated in the "rental agreement" held by the "rentee," subject to all conditions set forth in this endorsement . . . .

C. Limit of Insurance
3. The insurance provided by this policy for the "rentee" and any other person authorized by the "rental agreement" held by the "rentee" is subject to the terms,

conditions, restrictions and limitations contained in the "rental agreement ". . . .

(Doc. 12-3, Def. Ex. 2, Daily Auto Rental Endorsement.)

Also on the date of the accident, Mr. Bliss had in effect an automobile insurance policy and a personal liability umbrella policy issued by Plaintiff's Canada Division. (Doc. 1-6, Compl. Ex. C.)

Rose Lafferty, on behalf of the Estate of William Lafferty ("Lafferty Estate"), and Ms. Prater asserted claims against Kevin James Bliss, personal representative of the Estate of Carman Bliss ("Bliss Estate"). (Doc. 15, Wittenbrink Aff. ¶¶ 3-5.) On May 16, 2006, Plaintiff settled the claims of Ms. Prater against the Bliss Estate. (Wittenbrink Aff. ¶ 9.) On December 27, 2006, the Lafferty Estate sued the Bliss Estate in state court. (Doc. 24, Stip. ¶¶ 3, 4; Wittenbrink Aff. ¶ 4.) Plaintiff hired counsel to defend the Bliss Estate in the action brought by the Lafferty Estate. (Doc. 34, ¶ 21; Wittenbrink Aff. ¶ 8.) Defendant denied coverage and refused to defend or indemnify the Bliss Estate in connection with the claims. (Wittenbrink Aff. ¶ 6.)

**III.     Standard.**

Summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Fuerschbach*, 439 F.3d at 1207 (quoting Rule 56(c)). The evidence, and all reasonable inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *See* Rule 56(c).

The movant bears the initial burden of demonstrating the absence of a genuine issue of

5

material fact and entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The Tenth Circuit has observed:

> Although the movant must show the absence of a genuine issue of material fact, it "need not negate the nonmovant's claim." *See Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996). Once the movant carries this burden, the nonmovant cannot rest upon its pleadings, but "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [it] carries the burden of proof." *Id.* "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

*Burnham v. Humphrey Hospitality Trust, Inc.,* 403 F.3d 709, 714 (10th Cir. 2005).

The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Evidence relied upon in opposition to summary judgment "may be insufficient to create a triable fact if it is nonspecific or otherwise non-responsive, vague, conclusory, or self-serving." *Piercy v. Maketa*, 480 F.3d 1192, 1197-98 (10th Cir. 2007). The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

**IV.   Discussion.**

    **A.   New Mexico law applies.**

In diversity cases, a federal district court applies the substantive law of the state in which it sits, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), which includes the forum state's choice of law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

New Mexico interprets insurance contracts according to lex loci contractus, the law of the place where the contract was executed. *Shope v. State Farm Ins. Co.*, 925 P.2d 515, 517 (1996).

The Rental Agreement was executed in New Mexico and New Mexico was to be the principal location of the insured risk under the Policy. *See State Farm Mut. Ins. Co. v. Conyers*, 784 P.2d 986, 990-91 (1989) (holding under either the rule of lex loci contractus or the principles of Restatement (Second) Conflict of Laws, New Mexico rather than Nevada law should be applied). I conclude, and, the parties do not dispute, that New Mexico law applies to this diversity action.

**B.     The Policy does not provide coverage for the accident.**

"New Mexico public policy favors freedom to contract and enforces contracts that do not violate law or public policy." *McMillan v. Allstate Indem. Co.*, 84 P.3d 65, 69 (N.M. 2004). Under New Mexico law, an insurance policy is construed as a whole in order to determine whether ambiguities exist in the language of the contract. *See Rummel v. Lexington Ins. Co.*, 945 P.2d 970, 976 (N.M. 1997).

The language of the contract is given its plain and ordinary meaning. *Cooper v. Chevron U.S.A., Inc.*, 49 P.3d 61, 67 (N.M. 2002). If the language is clear, the contract must be enforced as written. *Ponder v. State Farm Mut. Auto. Ins. Co.*, 12 P.3d 960, 965 (N.M. 2000); *see also Gonzales v. Allstate Ins. Co.*, 921 P.2d 944, 948 (1996) ("If the words of an insurance policy can reasonably be given their plain, ordinary, and popular meaning, the provisions should be applied as written, and the parties should be bound to the agreement into which they entered.").

New Mexico law does not "strain or torture the language of an insurance policy to create an ambiguity." *Id*. "When discerning the purpose, meaning, and intent of the parties to a contract, the court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *CC Housing Corp. v. Ryder Truck Rental, Inc.*, 746 P.2d 1109, 1111 (N.M. 1987); *see also Montoya v. Villa Linda Mall, Ltd.*, 793 P.2d 258, 259 (1990) ("It is black letter law that, absent an ambiguity, a court

is bound to interpret and enforce a contract's clear language and cannot create a new agreement for the parties.").

In analyzing an insurance policy, the primary goal is to ascertain "how a reasonable insured would understand the term at the time of purchase." *Battishill v. Farmers Alliance Ins. Co.*, 127 P.3d 1111, 1114 (N.M. 2006) When the policy language is clear and unambiguous, New Mexico courts give effect to the contract and enforce it as written. *See Estate of Griego v. Reliance Std. Life Ins. Co.*, 997 P.2d 150, 155 (N.M. 2000); *Richardson v. Farmers Ins. Co.*, 112 N.M. 73, 74, 811 P.2d 571, 572 (1991) ("Absent ambiguity, provisions of [a] contract need only be applied, rather than construed or interpreted.").

In construing insurance policy provisions, "[a]mbiguities arise when separate sections of a policy appear to conflict with one another, when the language of a provision is susceptible to more than one meaning, when the structure of the contract is illogical, or when a particular matter of coverage is not explicitly addressed by the policy." *Rummel*, 945 P.2d at 976 (citations omitted). If, and only if, an ambiguity is found, the policy is liberally construed in favor of the insured. *Battishill*, 127 P.3d at 1115.

The Endorsement plainly states that an insured includes a "rentee" but *subject to all conditions set forth in this endorsement*. (Doc. 12-3, Def. Ex. 2, Daily Auto Rental Endorsement) (emphasis added). The Rental Agreement specified that optional SLI coverage was available for an additional charge for claims that may arise out of operation of the Rental Vehicle. Notably, Mr. Bliss declined to purchase SLI coverage.

The Rental Agreement Jacket entered into by Mr. Bliss clearly states that Defendant, through Dollar, did not provide "any third-party liability protection covering this rental" to Mr. Bliss, unless he purchased SLI at the beginning of the rental. The only qualification on this statement was that

Dollar was permitted by law to rent the Rental Vehicle without providing liability insurance. As more fully discussed in Section IV C, *infra*, New Mexico law expressly permits an entity to rent a vehicle to another without providing liability insurance coverage on the vehicle. *See* N.M.Stat. Ann § 66-5-205.3 (C)(7). Thus, the qualification was inapplicable.

Mr. Bliss was subject to the terms and conditions of the Rental Agreement and Rental Agreement Jacket, including the condition that he and his insurance company would be responsible for defending and paying any third-party claim resulting from his use of the Rental Vehicle. This conclusion is underscored by the terms of the Policy, Rental Agreement, and Rental Agreement Jacket, which are clear and unambiguous. The Rental Agreement Jacket entered into by Mr. Bliss clearly states that the person renting the automobile agreed that he and/or his insurance company would be responsible for handling, defending and paying all third-party claims for bodily injury, death or property damage caused by or arising from the use or operation of the Rental Vehicle.

Mr. Bliss did not accept the offer for SLI coverage, and he did not pay any consideration for such coverage. Mr. Bliss represented and warranted that his insurance was sufficient to satisfy the minimum applicable financial responsibility limits required by New Mexico law. As set forth in the Policy and the Rental Agreement, Mr. Bliss agreed to be responsible for any third-party claims. The Policy does not cover the claims arising out of the accident.

### C. The Policy conforms with the NMFRA and New Mexico public policy.

The NMMFRA reflects and embodies New Mexico's public policy of adequately compensating victims of automobile accidents. *See Sam v. Sam*, 134 P.3d 761, 768 (N.M. 2006). The NMMFRA does not require that rental car agencies provide insurance coverage, but rather contains an exception for coverage of rental vehicles.

The NMMFRA mandates:

> A motor vehicle insurance policy shall . . . insure the person named in the policy and a person using any such motor vehicle with the express or implied permission of the named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of the motor vehicle . . . .

N.M.Stat. Ann § 66-5-205.3 (A)(2).

The NMMFRA, however, contains an express exception to the required coverage for rental vehicles: "Permitted exceptions to coverage . . . include . . . an exclusion to apply when a vehicle is rented to others or used to carry persons for a charge . . . ." N.M.Stat. Ann § 66-5-205.3 (C)(7).

While New Mexico law requires every vehicle in the state to be covered by liability insurance, a rental car company may contract to pass this responsibility to its customers. Section 66-5-205.3 (C)(7) relieves a rental car company from any obligation to provide coverage for its customers.

The terms of the Policy and Endorsement clearly provide that coverage was subject to the terms and conditions of the Rental Agreement, which in turn incorporated the terms of the Rental Agreement Jacket. The Rental Agreement and Rental Agreement Jacket clearly and unambiguously provided that Mr. Bliss and his insurer were liable for any third-party claims arising out of his use of the Rental Vehicle. Mr. Bliss affirmatively declined to purchase SLI coverage, and warranted that he had sufficient insurance coverage to satisfy the NMMFRA. Indeed, Mr. Bliss was covered under the policies issued to him by Plaintiff. Consistent with New Mexico's public policy, the victims of the accident have been, or will be, adequately compensated by Plaintiff. Under these circumstances, the Policy does not violate the NMMFRA or New Mexico public policy.

### D.     Plaintiff's arguments are unavailing.

Plaintiff argues that the Rental Agreement is inadmissible because it is illegible and not properly authenticated. The Rental Agreement is legible. While the Rental Agreement Jacket is

difficult to read, it is legible with careful scrutiny. The Rental Agreement and Rental Agreement Jacket were authenticated by the Affidavit of Bob Satches. *See Farmers Alliance Mut. Ins. Co. v. Naylor*, 452 F.Supp.2d 1167, 1176-77 (D. N.M. 2006) (observing business records, which normally would be admissible at trial under the hearsay exception set forth at Fed. R. Evid. 803(6), may be considered if authenticated by a person through whom the exhibits could be admitted into evidence). The Rental Agreement and Rental Agreement Jacket would be admissible at trial through the testimony of Mr. Satches. Accordingly these documents are properly considered on summary judgment. *See* Fed. R. Civ. P. 56(e).

Plaintiff relies on cases from other jurisdictions to support its assertion that the Rental Agreement violates the NMMFRA. However, these cases are readily distinguishable because they are controlled by the statutes of other states that do not include an exception analogous to § 66-5-205.3(C)(7). *See Li v. Enterprise Rent-A-Car Co. of Utah*, 150 P.3d 471, 474 (Utah 2006) (applying Utah statute); *Auto Owners Ins. Co. v. Enterprise Rent-A-Car Co.-Midwest*, 663 N.W.2d 208, 210-22 (S.D. 2003) (applying South Dakota statute); *Premier Ins. Co. of Mass. v. Empire Fire and Marine Ins. Co.*, 2002 WL 58465 *3 (Mass. 2002) (applying Massachusetts statute); *Liberty Mut. Ins. Co. v. Citizens Ins. Co.*, 990 F.Supp 518, 521 (S.D. Mich. 1997) (applying Michigan statute); *Bowers v. Alamo Rent-A-Car, Inc.*, 965 P.2d 1274, 1277 (Haw. 1998) (applying Hawaii statute); *State Farm Mut. Auto. Ins. Co. v. Enterprise Leasing Co.*, 549 N.W.2d 345, 348 (Mich. 1996) (applying Michigan statute). Put simply, the cases relied upon by Plaintiff are inapplicable herein because none applies New Mexico law.

Plaintiff contends that the Endorsement and Rental Agreement are invalid because Defendant has not offered evidence that it filed such forms with the New Mexico Superintendent of Insurance

11

as required by N.M. Stat. Ann. § 59A-18-12(A).[2] The New Mexico Court of Appeals has observed:

> [E]ven if a private cause of action could be predicated on a violation of [§ 59A-18-12(A)] - issues we need not decide - Plaintiffs must at least show prejudice resulting from Defendant's failure to submit the application if they are to prevail on a private cause of action. *Cf. Romero v. Dairyland Ins. Co.*, 803 P.2d 243, 247 n. 1(N.M. 1990) (plaintiff has private right of action under article 16 of insurance code if it is proven that plaintiff suffered damages from a specific violation of the article). In other words, Plaintiffs must show that if the declarations page had been submitted to the superintendent for approval, the superintendent would have disapproved the form and required a different manner of indicating that . . . coverage was not provided under the policy. Also, Plaintiffs must show that if they had read the different language, they would have purchased . . . coverage.

*Vigil v. Rio Grande Ins. of Santa Fe*, 950 P.2d 297, 302 (N.M. App. 1997).

Plaintiff has presented no evidence that would establish either of these propositions. The Endorsement and Rental Agreement are not rendered invalid by N.M. Stat. Ann. § 59A-18-12(A).

A right to subrogation also exists if an insurance company pays a claim that should have been paid by another insurer. *Southwest Steel Coil, Inc. v. Redwood Fire & Cas. Ins. Co.*, 148 P.3d 806, 810 (N.M. App.2006). Plaintiff is not entitled to subrogation from Defendant because the Policy does not provide coverage for the accident.

Plaintiff requests certification of the issue of whether a customer of a rental car company can effectively decline insurance coverage on a rental vehicle. Certification of the issue to the New Mexico Supreme Court is unnecessary in light of Section 66-5-205.3 (C)(7).

## V.    Conclusion.

Defendant has satisfied its burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Plaintiff failed to meet its burden with

---

[2] Section 59A-18-12(A) provides, in pertinent part: "An insurance policy or annuity contract shall not be delivered or issued for delivery in this state, nor shall an assumption certificate, endorsement, rider or application that becomes a part of a policy be used, until a copy of the form and the classification of risks pertaining to the policy have been filed with the superintendent."

respect to its cross-motion for partial summary judgment and failed to show an a genuine issue for trial. Viewed in the light most favorable to Plaintiff, the record demonstrates that Defendant is entitled to judgment as a matter of law that the Policy does not provide coverage for claims arising out of the October 22, 2005 accident.

**WHEREFORE,**

    **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 11), filed on July 10, 2007, is **GRANTED**.

    **IT IS FURTHER ORDERED** that Plaintiff's Cross Motion for Partial Summary Judgment (Doc. 13), filed on July 24, 2007, is **DENIED**.

_____
    **ROBERT C. BRACK**
    **UNITED STATES DISTRICT JUDGE**